Good morning, Your Honors. Robert Powell on behalf of Mr. Morales-Izquierdo. In this case, we submit that Mr. Morales is entitled to a fair and lawful adjudication of the application for adjustment of status that was submitted, that was resolved or decided back in January of 2003. We're asking the court to remand the application back to the Immigration Service, to CIS, for adjudication under the law as it was in effect in January of 2003. There are two main issues, I think, that I'd like to address here. The first of them is whether or not this I-212 waiver application, the waiver for a prior deportation, has to be filed before the Immigration Service reinstates a prior order of deportation. It's undisputed, I think, that many applications that were filed back in this time, applications for adjustment of status by similarly situated individuals, were in fact approved and people were granted permanent residence status. This is before the Board's decision in Torres-Garcia. As a matter of fact, the problem here was that the application was not filed until after reinstatement. Is that right? The I-212 waiver application, right, that application form was not physically filed until after the reinstatement occurred. And we have some authority that says in that case then there is no jurisdiction, right? That there is, I'm sorry, I don't quite understand. Well, I mean, that was poorly phrased. Don't we have some authority that says that that makes a difference, that if you don't file it until after reinstatement you're entitled to relief? There are two, I don't think, there's probably a dispute about how those cases are to be interpreted. There are two, as I understand it, two relevant cases, two relevant Ninth Circuit cases on this issue. One is called the Perez-Gonzalez case and the other is the Padilla case. The government argues that in light of those two cases, the waiver application has to be filed before the reinstatement occurs. We submit that that's incorrect. The government has not properly interpreted those two cases. The Perez-Gonzalez case, first of all, is a case in which the individual there did in fact file the I-212 waiver application before the reinstatement occurred. And in Perez-Gonzalez this court held that where that happens, where the applicant files the application for adjustment of status and also the waiver application before reinstatement occurs, the individual is entitled to a fair adjudication of those applications and if they're approved then the person gets permanent resident status. But that case did not address the issue, did not say anything one way or another about the converse. What happens if the application for adjustment of status is filed but the person did not file that waiver application? So we submit under Perez-Gonzalez that that issue was not resolved one way or the other. Why shouldn't we give Chevron deference to Enrique Torres Garcia? Oh, we did. We have given Chevron deference to Torres. That's what this court has already done. Okay. That case was decided. That's Julian Gonzalez, right? That's correct. So let me just be candid with my concern about your client's claim here. I could be missing something in this, but it seems to me if Joanne Gonzalez says that the form that is barred for 10 years, giving credit to Torres Garcia, then the other issue doesn't matter if Joanne Gonzalez applies. The petitioner loses. And at least what I went to law school, they said when you interpret a statute, it may be a fiction but you view it like the interpretation is what it always meant. So I'm really having trouble seeing why that isn't conclusive and why the retroactive application argument isn't just out the window. First of all, let me just point out, remind the court that this issue, this retroactivity issue does arise in the Joanne Gonzalez case that's coming back up to the Ninth Circuit in the class action lawsuit. So this issue arises not only in this case but in the class action lawsuit. And we had requested before, I understand that our request was denied, that the case be held in abeyance. But I think the retroactive – The problem is that, as I understand it, we're the priority or the primary panel on this issue. I understand. But there's maybe a fuller view of the circumstances that arise in the context of this class action lawsuit. Okay. Well, there may be a fuller view of the circumstances, but I'm thinking, like, right now, a very narrow view of the Supreme Court. So – It's less evident in rivers. And unless you can tell me why that doesn't apply here, I have trouble understanding your case. I understand. I think it does not apply in this case. And the reason is I think that law school understanding that we have of what the courts are doing is not really tenable. That particular view, at any rate, is not tenable in light of the Supreme Court's decision in Brand X. Okay. I think what we have to understand is this, that when Congress writes a statute, yes, sometimes the statute is clear and unambiguous. And the court, you know, in the Chevron deference analysis, uses all of its traditional tools of statutory interpretation and says, this is what the statute means. That happens sometimes. In light of Chevron and Brand X, that does not always happen. There's sometimes – Well, it's ambiguous. Okay. But let's say it's ambiguous. Then if a court makes a decision resolving the ambiguity, why doesn't that mean what the statute meant for all times? I don't think that can be – that's a tenable position in light of the Perez-Gonzalez case and the Duran-Gonzalez case. Because if that view is correct, then Perez-Gonzalez would have to be the law and Torres-Garcia couldn't be given Chevron deference to. In other words, if the view is that whenever the Court of Appeals interprets the statute, that interpretation is what the statute means forever, then it wouldn't have been possible for the court in Duran-Gonzalez to say, well, you know what, there's some ambiguity. And so we thought that's what it meant forever. But now, because it's ambiguous, we have to give priority to what the BIA said. But while we give deference, so the statute can be interpreted in different ways, in Interpretation A or Interpretation B. Initially, this court says we think the best interpretation, not the only interpretation, but the best interpretation is Interpretation A. That's Perez-Gonzalez. Okay. But in light of Grand X, that's not necessarily a final interpretation because there's statutory ambiguity. The Supreme Court allows the agency to come along and change that or in effect overturn that interpretation and say, well, you know, in light of what we see in our practice, here's the better interpretation. Under Grand X, that's appropriate. Okay. But, again, that does not mean that the statute, as originally enacted by Congress, has one fixed and irrevocable meaning for all time. The statute has an ambiguity in it. Do you have any precedent where the Supreme Court or a circuit court has said that when you have this kind of Grand X Chevron deference decision that then the principle of rumors no longer applies? Because I didn't see that in your brief. Right. No, I'm not aware of any Supreme Court decision or circuit court decision that says it that way. I think it's quite clearly implicit in the Grand X case. The Grand X case, the Supreme Court does talk about, well, what's the status of the prior, where there's a circuit court of appeals decision that's later reversed by the agency. What's the status of that prior circuit court decision? And Grand X talks a little bit about that, alludes to that issue. And what it says is that, you know, when the agency issues its decision, it's not reversing the prior circuit court decision. It's that decision, in fact, the Grand X case, it says that decision, the court of appeals decision, in all other respects, I'm quoting here, that in all other respects the court's prior ruling remains binding law. And I think what that means is, for example, with respect to retroactivity issues. You know, that decision, the court of appeals decision establishes binding law, what the law is at the time that decision is rendered. That's the law. That's the best interpretation of how that issue is to be resolved. That does not mean, under the Supreme Court's decision, that the agency cannot later come to say we think this is a better interpretation. The agency has that authority under the statute, the ambiguous statute originally enacted by Congress. But I think, yeah, the important issue here is that that prior circuit court decision is it remains binding law. That's what the law is once the court of appeals resolves the issue. But if that first decision by the court of appeals essentially addressed an ambiguous issue of statutory construction because the agency had never looked at it, and then the agency applies its expertise to that ambiguity and decides the question a different way, Brand X says that we have to essentially accord deference to the agency's interpretation. As a practical matter, that renders the prior appellate decision without much effect, if it's on the exact same issue, doesn't it? Not at all. I mean, again, the Supreme Court says that decision remains binding law, right, as to issue before that. But it can't be both. I mean, either we give deference to the administrative agency's interpretation or we give none because we have a prior precedential decision that comes out the other way. You can't have both. Well, Torres-Garcia right now is binding law. I mean, that's what Gonzalez says, that's binding law. We only have one binding decision. That does not mean that the board cannot change it. You know, six months from now or next year, the board can change its interpretation again. And then at that point, it's binding law going forward. So when we say that, you know, the agency has that authority to interpret the statute, what that means is that the agency, Torres-Garcia, can establish what the law is. That's binding law going forward from the date of that decision. But that does not say anything about what the law was before that decision. But you would agree, then, that from the date of Torres-Garcia to the present, that the Perez decision is no longer binding law. I think we have to, under Duran-Gonzalez, that's correct. But from January 2006, when Torres-Garcia was issued, that's the official or binding, that's what the law is from that date going forward. Mr. Powell, you wanted to save time for rebuttal. You wanted to save five minutes. You only got three-plus seconds. I'm going to add a couple of minutes to your time because I took up your time. But would you like to reserve your time now? I would like to. Thank you, Your Honor. Okay, thanks. Okay, we'll add two minutes to Mr. Powell's time. Good morning, Your Honors. May it please the Court, Papu-Sandhu. On behalf of the respondents, Your Honors, addressing the Duran-Gonzalez issue first, the government would submit that in Duran-Gonzalez, the court courted deference to the agency. That is a ruling of federal law that clearly under Rivers and Harper applies to all pending cases. In fact, if you look at the Duran-Gonzalez decision closely, you'll see that in Duran-Gonzalez itself they applied the holding in the case to the plaintiffs before them. They said this, that we vacate the district court's order because we are bound by the VA's interpretation in Torres-Garcia and pursuant to In re Torres-Garcia, plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers. The fact that an initial judicial decision may have been based on Step 1 or Step 2 of Chevron does not affect the clear precedent in the Supreme Courts and the circuit courts that in the civil context, when you have an interpretation of a statute, federal statute, that is the law that is then to be applied to all cases pending on a plaintiff's order. Now, is there any case in the Supreme Court or any of the circuits that's addressed the retroactive application argument that Mr. Powell presents? Your Honor, I did not find the case exactly on point. I would note again that Duran-Gonzalez applied its holding to the plaintiffs before it and it appears as well in Brand X. At the end of this decision, Brand X says the judgment of the Court of Appeals is reversed and the cases are remanded for further proceedings consistent with this opinion. Did either of the Brand X courts or Duran-Gonzalez, did they address retroactivity? No, they did not, Your Honor. I would point out, as opposing counsel has mentioned, that the Duran-Gonzalez case is on appeal now where this issue is raised, but I would point out that Judge Peckman in the district court rejected this argument, finding that it didn't even raise serious questions on the merits and refusing to grant injunctive relief. And she said, While plaintiffs are correct in observing a factual distinction between traditional statutory interpretation and interpretation based on deference to an agency, they fail to demonstrate why this distinction compels a court to depart from the traditional presumption of retroactivity, which was my earlier point. It doesn't matter if it's step one or step two. Your Honor, as Judge Talman was saying, once the court has determined that deference is owed, that holding is a federal, now is federal law, that deference is owed to the agency. And is Judge Talman right that our panel has submission priority over whatever panel would be assigned to hear the Duran-Gonzalez class action appeal? Well, I'm not familiar with the inter-workings rules of the court, but I would think so. Has that other case been assigned to a panel for argument yet? No, it has not, Your Honor. I guess we're ahead of this. So we would ask the court to simply to affirm the district court's decision based on this ground. It's clear as a matter of law, and there's no question. We don't have to get into all the specific issues of which Judge Thiler and then the district court judge based the decision on blow in the district court. Well, we would argue, though, that Duran-Gonzalez speaks to the second issue as well. Opposing counsel talked about the interplay between Perez-Gonzalez and Padilla, the two cases previously, and how to interpret them. We think it's clear under even the pre-Duran-Gonzalez law that even if Duran-Gonzalez did not apply in this case, that because the petitioner didn't file an I-212 waiver application prior to reinstatement, that they would be ineligible under the pre-Duran-Gonzalez law. And I'd like to read to you a quote from the Duran-Gonzalez decision. They say, the court says, We distinguish Padilla where we held that an alien who had unlawfully re-entered the United States was barred by the reinstatement provision from adjusting his status under the special adjustment provision on the grounds that Padilla had applied only for adjustment of status prior to the initiation of reinstatement proceedings, while Perez-Gonzalez had applied for adjustment of status and an I-212 waiver of admissibility before the initiation of his reinstatement proceedings. That's at 508 F3rd 1236. So this court, even in Duran-Gonzalez, appears to be interpreting those two decisions to say that, indeed, there is a clear rule that was set out for this decision that you have to file an I-212 waiver. Putting that to the side, though, just to make sure I've got the analytical framework, if we agree with Mr. Padilla, it's a different matter. But if we agree with you that Duran-Gonzalez applies and it's not retroactive, then am I right we don't have to get into, we don't need to address the issues of the significance of asking for the form or not asking for the form of attendant due process issues raised? That's correct, Your Honor. Yes. I'd like to raise a jurisdictional concern. This case comes to us in a rather unusual posture. It was filed as a habeas petition in the district court prior to the effective date of the Real ID Act of 2005. According to the provisions of that statute, the case was transferred or should be transferred to our court as a petition for review, but he's already had a petition for review adjudicated by an in-bank panel of this court which upheld the reinstatement of his prior deportation order. Yes, Your Honor. So should we simply dismiss for lack of jurisdiction this appeal on the grounds that under the Real ID Act, the district court was without jurisdiction to decide the legal issue that we're wrestling with? That would be one course that the court could take. We suggest in our briefs that the court could actually take jurisdiction over this case as a petition for review. We do believe it's an important point for the Department on the jurisdictional issue because we think that there is a, in fact, Your Honor, as we submitted in our briefs, the Department actually obtained authorization from the Office of Solicitor General to file a mandamus action while the case was in district court. I think I remember that when we were on the in-bank panel, that there were issues about your mandamus in the district court, right? Right. You asked us to look at it, and we didn't want to address it, right? And it was, I can understand the court's decision because we do have the normal appeal route, and now here we are, we can raise it again. But precisely, Judge Solomon, for the issues, the point that you made, we felt at that point while the case was pending, the other on-bank case was pending in the Court of Appeals, that that was why we asked for a mandamus because as we can see what's happened is the issue, the case was decided in Morales two years ago, and here we are now still adjudicating this issue. I think it goes to the underlying policy reason of why it's important that these, consistent with the Real ID Act in 2005, that these issues be streamlined into the Court of Appeals. And we would suggest that the court could make a ruling on this issue, finding that the district court had no jurisdiction, but that the court, we've cited some authority in our brief, could convert the appeal to a petition for review. And there's no precedent saying there can't be two petitions for review. That's true. Right. That's true, exactly. And I think that problem is a different issue. It's not like the issue before the in-bank panel was reinstatement. Right. This is whether or not he's eligible for adjustment of status under I-212. And I think the in-bank panel also explicitly carved out this issue on adjustment of status and said that it was not deciding that. Well, you know, it's interesting, Your Honors, because the on-bank panel in its initial decision actually had some language in there saying that because there was no evidence of an I-212 application being filed, he wasn't eligible for adjustment of status, sort of in a footnote, not really addressing it. And then there was a subsequent to the on-bank decision opposing counsel, same counsel in this case, filed a, I've never seen one of these, an on-bank panel re-hearing, indicating, suggesting that there was an I-212 application that was filed before the reinstatement. And so the court, this court, and noting that this issue was in the district court, this court issued a modified order denying the panel re-hearing petition but deleting the language. So, you know. That was my recollection. And so. That just shows you have a spirited advocate in your opponent. Yes. He certainly has. Yes. That's true. But we would argue, contrary to what's in the brief, that this type of situation is more closely analogous to the situation where you have a normal deportation proceeding and there's a denial of discretionary relief and it's taken up in a petition for review. We think this is the FODI, the Supreme Court decision. It's more closely than that than the cases that the petitioner cites in his brief because you can even look at the reinstatement statute and see that they kind of go together. Here you have the reinstatement happening and you have the individual being ineligible for any relief under that particular statute. It all happened on the same day, January 15, 2003. The other thing I would note is that in Padilla and Perez-Gonzalez, although the court didn't specifically address this issue, those were cases where this precise issue of eligibility for adjustment of status was taken up in a petition for review with review of the reinstatement order. So there's Ninth Circuit case law, if not dealing directly with it, certainly showing that this has happened. It's happened in all the other circuits. In fact, there's not a case that the opposing counsel's brief cited showing that there's this kind of bifurcated review where there's been a reinstatement and the alien can go to district court for contesting eligibility for discretionary relief and then file a petition for review. There's a point I'd like you to address before you conclude on this. Okay, if we accept the government's position under Ian Gonzalez, then that means that the petitioner can't seek relief for a decade, right? He's got to wait 10 years? Well, Your Honor, the statute, 1182A9Cii, which is the waiver provision that says you have to be 10 years outside of the country, says 10 years from the date of, quote, the last departure. Okay, so I'd have to wait 10 years from when you depart? Well, I think that the board hasn't specifically addressed that issue. Now, one interpretation could be that his last departure was in 2001 when he was last excluded. Whatever that date is, whether it's 2001 or a slightly different date, it's 10 years from now. So I wanted you to address it if you would, please, with the due process argument that's made, saying that's such an interference with family values, given that he's got a U.S. citizen wife and kid, that that offends due process. Right. Well, Your Honors, we certainly would recognize that there are circumstances, there are sympathetic cases in the immigration context. We would simply point out that this is not a case where all the equity is on the side of the petitioner. Indeed, he has reentered the country illegally twice, at least, of what's in the record. And he has also, as indicated in our briefs, misrepresented his immigration history on his adjustment application with regard to the prior removals. So the other point is that the law is clear here, where the Congress has expressed its intent in 8 U.S.C. 1182a9c. The petitioner certainly has the avenue of applying for deferred action. It would be wholly within the discretion of the Department of Homeland Security, but they could certainly ask if there are extenuating circumstances, if there are particularly sympathetic circumstances, they could always seek this humanitarian deferred action with the Department of Homeland Security. And once those 10 years have passed, they could seek to file a waiver and seek permission to reenter. But the case law is clear on this. The Ninth Circuit, we've cited a couple of decisions where the court has made clear that even in the face of significant equities or sympathetic case, the court simply cannot provide relief where the law is clear. Thank you. Thank you. Okay, Mr. Powell. And add two minutes to that statement, please. Thank you, Your Honor. So basically you've got five minutes to state your case. First of all, before I forget, I would like to, in response to a question before about whether or not if Torres-Garcia, if this court says Torres-Garcia should be applied retroactively, is that the end of the case? No, I submit that it's not necessarily. And the reason is this. There's a factual dispute about what happened in January of 1998. That's when Mr. Morales was forced to leave the United States. At that point, he claims that that was a voluntary departure. That was not a deportation. The reason is that he had previously made a departure from the United States back in 1994, 1995, something like that, and then came back. And so when he was in detention in January of 1998. Are you challenging the reinstatement of the prior deportation order? No, no, because that reinstatement under this court's law is proper, even if a person is given voluntary departure. But we don't have an issue on his admission now, do we, before us? I'm sorry. We don't have to decide any question about whether he is or isn't properly admitted now. No, we don't. We don't. It's not an issue. But my point is that even if this court says that Torres-Garcia should be applied retroactively, Mr. Morales claims that while he may be subject to reinstatement, with respect to the application for adjustment of status, he is not inadmissible, even if Torres-Garcia applies to him because he's not inadmissible under Section 212A9C. In other words, he left under voluntary departure, not under an order of deportation. We don't have to decide anything with respect to that, do we? Well, not necessarily correct. If this court agrees with my argument that Torres-Garcia only applies prospectively, then we don't have to reach this issue of voluntary departure. I'm just speaking as one judge, but I don't agree with that. So I don't know where the panel is. But assuming the panel applies to Rand Gonzales, then are you saying he would still have some options? He would not be inadmissible under Section 212A9C because of the underlying factual dispute about whether or not the departure in January of 1998 was a deportation or a voluntary departure. So procedurally, then, what would have to happen? I think it would have to be remanded back. And what we're asking is the case to go back to CIS for a fair adjudication. He has a chance to explain his side of the story, his side of what happened. The government has a chance to controvert that or look at that and make a decision based on the evidence that he's never had a chance to submit to anybody yet. Well, it wasn't pleaded before and proved before the agency, was it? All that happened was the Immigration Service immediately issued a denial. It didn't really look at that issue. It just said, we're going to do it. Did you bring it before the board? This case did not go to the Board of Immigration Appeals. This was like an INS agent, right? Right. Just an immigration officer. It came straight to us. And it comes straight, well, it went to the district court, of course. Yeah, it comes straight to us by virtue of your habeas, which is a challenging adjustment of status. That's correct. Which, under the Real ID Act, it's clear now that district courts don't have jurisdiction for those kinds of things. No, that's not correct. Not correct. In this case, it's clear that the district court does have jurisdiction over the adjustment of status application. And the reason that's very clear, I think, under the Supreme Court case law, the government cites FODI. But you filed it under a habeas petition, and the Real ID Act says that you've got to transfer habeas cases to the Court of Appeals and treat it like a petition for review. But let me read exactly what that provision says in the Real ID Act. It's Section 106C. It says that the district court shall transfer the case, and then parentheses, or the part of the case that challenges the order of removal. That's a crucial distinction, because here we're not challenging the order of removal. That's a separate issue. The reinstatement was made by a different officer. That's a separate file, separate case. He's challenging the decision made by the immigration officer on the application for adjustment of status. That is not a challenge to the ñ that's not a part of the case that challenges the order of removal. But you're confusing the challenge with the mechanism by which you bring that challenge. And the mechanism that you invoke is habeas corpus, and the statute says the district courts no longer have the power to adjudicate those cases under a habeas corpus petition. The petition was filed under ñ there's two jurisdictional grounds that are alleged, habeas corpus and Section 1331, Administrative Procedures Act review, APA review. But either way, either way you look at it, the statute says in a habeas proceeding that you transfer, the court must transfer that part of the case that challenges the order of removal. Mr. Powell, your time is up, even with the extra time we gave you. So I think we have to conclude this in this. Judge Tolman, I'll get you over. Okay, the case shall be submitted with thanks to both counsel for a nice argument. Thank you, Your Honor. Okay. That's it. So we'll adjourn until tomorrow. Thank you.
judges: Beezer, Gould, Tallman